*First Judicial District.*

# In the District Court of Philadelphia.

## WELSH *v.* OATES.

A parol lease of her property for a year by a married woman is binding upon her where she has received a valuable consideration for it in advance and accepted the rent as it fell due.

Ejectment.

Opinion delivered September 27, 1873, by

LYND, J. The plaintiffs are husband and wife. The latter, in January, 1872, received from the defendant $750, for the good-will of the premises in question, and agreed (by parol), that he might go into possession for the term of one year at $33 a month. Her husband was fully apprised of the transaction and did not object.

Before the year had expired; and without the defendant having been in any default, they began this suit.

These facts appearing from the testimony adduced for the plaintiff, a nonsuit was entered.

Plaintiffs complain of this nonsuit, on the ground that a married woman cannot make a valid lease of her real estate, unless by writing, acknowledged according to the act of February 24, 1770, (Brightly's Digest 460.)

The act of 1770, undoubtedly prohibits a married woman from "disposing of and conveying" her real estate, by any form of assurance whatever, including that of lease, without an acknowledgment thereof, as in the said act provided ; but we are of opinion that a lease for one year (whether by deed or parol), is not a " disposal" of her real estate, within the provisions of the said act.

When this act was passed, a married woman never joined in a lease of her real estate for one year. Practically, a lease by her husband for such a term was sufficient—it might have been good for a very long term, should they both, or should he, having had issue and surviving her, so long have lived.

It would be simply absurd, then, to maintain that the legislature,

when they provided "where any husband and wife shall hereafter incline to 'dispose of and convey' the estate of the wife," etc., had in view a lease for one year.

It is conceded that the object of the act was to protect the estates of married women from undue influence or coercion on the part of their husbands, leading to an improvident disposal of her real estate. It was to discourage such a conveyance of or charge upon her real estate, as would operate beyond the period of the husband's life, to the injury of herself or of her heirs. Is a lease for a year within its purview?

No existing construction of the act is inconsistent with this view. All the cases are of attempts by a married woman to sell, charge, or lease, for a longer term than one year, her real estate, *i. e.* to make such disposal of her real estate, as *might* have been within the contemplation of the legislators of 1770. It is not necessary even to cite them.

But the construction just stated is not only the proper, but since the act of April 11, 1848, the necessary construction of the act of 1770. Since then the husband cannot *mero motu* make a lease of his wife's real estate. It is now her act—although his concurrence is still necessary. Shall she be put to the trouble and expense of preparing and signing a written lease and of a separate acknowledgement before a justice of the peace, in order to let her property for a single year? If the law be as contended for by plaintiffs, no well-advised lessee would rent property from her without such a lease. It is true that the act of 1848 does not extend her power of "disposal," but it certainly assures to her the " use and *enjoyment*" of her real estate. This certainly includes the power to let another occupy it. This power practically would be valuelesss, if the term should be limited to less than one year. Hence, practically, there can be no " enjoyment" of real estate, if the power to lease be limited to less than one year.

Is it not something like a corollary to this, that a letting for one year of one's real estate, is merely an " enjoyment," and not a " disposal" of it?

Is it not a hardship, then, that a married woman's "enjoyment" of her property should be fettered by a rigid construction of an act of assembly, that had in view her " disposal" of it?

By the distinction just suggested, we harmonize this legislation. This is certainly better than to subordinate the one act to the other; and especially a later act to a prior one.

This construction is also in harmony with that put upon the act in Lippincot *v.* Hopkins, 7 P. F. S. 328 (recognized in Swayne *v.* Lyon, 17 P. F. S. 436, and Finney's Appeal, ib. 453). There it is held that a married woman is liable upon a contract for *necessary* repairs to her separate estate. As it cannot be contended that the act of 1848 expressly empowers her to make such a contract, the above ruling must be upon the ground that the power is constructively given to her, because it is indispensable to the " use and enjoyment" of her real estate. Here a liability is fastened upon her by construction, in order that she may keep her real

property fit for use or enjoyment; a construction that she has the power to let others use and enjoy it, is almost an inevitable consequence.

We should have had no difficulty in reaching the conclusion just indicated, but for the case of Miller *v.* Harbert, 6 Phila. Rep. 531, a decision of our own courts, which was affirmed in the Supreme Court; but no opinion was delivered there, nor was an order made that it should be reported; nor is it anywhere reported or cited as a decision of that court. The language of the opinion of this court was, "that the lease of the land of a *feme covert*, either for a *longer or a shorter* term, must, in order to be valid, be acknowledged by her separately and apart from her husband;" the case, as disclosed by the bill of exceptions, was of a lease for *three* years, with no evidence that a letting for that period was indispensable to the "enjoyment" of the property by the lessor, and therefore was not a "disposal" of the property.

We can only say of this case, that as to its facts it differs from the case now under adjudication, and that as to the language of the opinion, it is not in accord with the views of the majority of this court at this time.

The very learned and usually accurate judge who tried the case and delivered the opinion, fell into the error of construing the act of 1770 as though it made an acknowledgment by a married woman essential to the validity of *every* lease, when it is clear and express that it applied to such leases only as were made "with intent to dispose of and convey."

Had the distinction now taken between disposal and enjoyment been submitted to him, we feel satisfied that he would not have said that the act of 1770 applied to all leases, without regard to the length of term or the purpose subserved by them.

The learned judge, in a recent case (Bond *v.* The Insurance Co., 30 Legal Intelligencer 304), has expressed views even in advance of those herein above indicated. There, upon the contention that, since the act of 1848, there could be no transfer of a wife's *personal* property, without the concurrence of the husband and an acknowledgment before a justice of the peace, he well observes: "Such a rule would render it impracticable for a married woman to dispose of her stocks and furniture, or even to make the smallest present without calling in a justice of the peace or notary public. Nay, more, the restriction would extend to purchase, because it is impossible to buy without giving an equivalent. It has not been imposed in terms, and we may believe that the court above will do some gentle violence to the act of 1848, rather than adopt a conclusion fraught with injurious consequences."

Substantially, this was holding that, as to personalty, "use and enjoyment" in the act of 1848, included the power of absolute "disposal;" in the case before us, we hold merely that, as to her realty, use, and enjoyment by a married woman, necessarily include the power to lease it for a term of one year.

If it is asked, to what length of term the lease of a married woman shall be limited, the answer is, to that length to which the "use and enjoy-

ment" of her realty demands—no more. A lease for any greater term is, as to the excess, a "disposal," and the provisions of the act of 1770 must be applied to it. What length of term is necessary to the enjoyment of real estate is a question of law or of law and fact, depending upon circumstances. The courts, taking notice of the immemorial habits of the people, will say, as matter of law, that dwellings, ordinary business premises, farms, etc., cannot be ordinarily leased for a less term than one year. Some mining and manufacturing properties may not be leased to ordinary advantage except upon much longer terms. In these cases the question would be for the jury. But whatever the length of term, the lease would be valid, if the premises could not be rented to ordinary advantage for a shorter term.

The same principle would rule the question of the liability of a married woman upon her contract for the improvement of her real estate. If it could not be rented to ordinary advantage without improvement, her right to enjoy would include the right to make such *necessary* improvement; and the liability would enure from the right.

THAYER, J. I concur in the judgment but not in the reasons which have been assigned for it. I prefer to rest the decision upon the doctrine of estoppels *in pais*. A doctrine which, although it originated in chancery, is now fully adopted by courts of law, and is found to be not only beneficial, but absolutely essential for the prevention of fraud and injustice. It is, accordingly, now well established that when an act or statement cannot be withdrawn without a breach of faith on the one hand and an injury on the other, such an act rises from the rank of evidence to that of an estoppel, and absolutely binds and concludes the party affected by it. Very many examples and illustrations of this are to be found in the numerous cases cited in the very elaborate and learned notes to Doe *v.* Oliver, 2 Smith's Leading Cases, 711, *et seq.* This kind of estoppel is applicable to *feme coverts* and infants, as well as to others, for it could not be tolerated that such persons should be allowed to injure others with impunity. 1 Story Eq. § 385; Fitts *v.* Hale, 9 N. Hamp. 441; Evans *v.* Bicknell, 6 Vesey 174,181; Godey *v.* Rodman, 6 Indiana 269; Drake *v.* Glover, 38 Ala. 382; Mount *v.* Morton, 20 Barb. 123; Barham *v.* Taberville, 1 Swan 437; Whittington *v.* Wright, 9 Georgia 23; Davis *v.* Tingle, 8 B. Munroe 543; Wright *v.* Arnold, 14 B. Munroe 658.

In Pennsylvania this doctrine has been applied in several cases to married women. In Fulton *v.* Moore, 1 Casey, 468, a married woman united with her husband in a conveyance for a valuable consideration, but her deed was not separately acknowledged. She and her heirs were held to be estopped by her conduct from taking advantage of the defect in the conveyance. "If," said Lewis, J., "Dorcas, instead of asserting her title at the proper time, permitted the property to be divided among the heirs of Jacob Cooper, she herself being one of them, it is her own fault. After Mrs. Lynn had sold the farm to Nichols and received the

consideration for it, it is easy to perceive the motive which she and Dorcas, as heirs of Jacob Cooper, might have to treat the house and lot as still belonging to his estate, and to divide it among the heirs after it had already been sold for his debts. They may perceive no dishonesty in such a transaction, but it appears to me that a chancellor or judge governed by the principles of equity, would take a very different view of the matter."

In McCullough *v*. Wilson, 9 Harris 436, a married woman was held to be estopped from taking advantage of an invalid mortgage of her separate estate, because she had procured a person to purchase the mortgage. In Couch *v*. Stratton, 1 Grant's Cases 114, a married woman was estopped by the same principle. And in the Commonwealth *v*. Shannon, 6 Harris 343, a minor was estopped by receiving the proceeds of a void sale. And so in Smith *v*. Warden, 7 Id. 424; Keen *v*. Coleman, 3 Wright 299, and Keen *v*. Hartman, 12 ib. 497, are not in conflict with these cases.; for there is a wide difference between enforcing by action against a *feme covert* a contract which is contrary to law, however equitable may be the claim against her, and permitting her to become an actor in a suit by which courts of justice are asked to lend themselves to the consummation of a fraud. Against such an attempt a court of law ought to set its face as steadfastly as a court of equity, especially where, as with us, equitable principles are applied by courts of law as liberally as by the hands of a chancellor. Wherever a court of equity would refuse relief to a *feme covert* plaintiff because of the dishonesty of the case she sets up, there she ought also, in Pennsylvania, to be turned away from the courts of law.

In the case now before the court, a married woman having received in advance from the defendant a large pecuniary consideration for a lease of the premises for a year, seeks to deprive him of the possession for which he has paid, and the price of which she retains in her own pocket.

I see no reason to doubt the correctness of the decision of this court in Miller *v*. Harbert, 6 Philada. Rep. 531. The only point there decided was, that a lease by a *feme covert*, either for a longer or a shorter term, must, in order to be valid, be in writing, and separately acknowledged by her. No question of estoppel appears to have been raised in that case. But I can entertain no doubt whatever, in view of the decision of the supreme court in Fulton *v*. Moore, that a married woman may estop herself by her conduct from setting up such a defect against a title, which must be held to be good unless she is permitted to take advantage of her own wrong and to practice a fraud upon her tenant by accepting and retaining the price of the occupancy while in the very act of repudiating the lease. It would, in my opinion, be a reproach to justice, if she should be permitted to turn her tenant out of the possession for which she has been paid, and that without offering to return the money she has received. I think the nonsuit was properly entered.

HARE, P. J., and MITCHELL, J., dissent.

*A. V. Parsons*, Esq., for plaintiff; *S. Davis*, Esq., for defendant.